1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
9                 AT SEATTLE

10   LINDSAY DUNN,                         CASE NO. C17-0333JLR

11                       Plaintiff,        ORDER

12          v.

13   BNSF RAILWAY COMPANY,

14                       Defendant.

15                    **I.   INTRODUCTION**

16          Plaintiff Lindsay Dunn brought this action against his former employer, Defendant

17   BNSF Railway Company ("BNSF"), alleging that BNSF violated the Federal Railroad

18   Safety Act ("FRSA"), 49 U.S.C. § 20109, when it retaliated against him in various ways

19   after he had engaged in activities protected under the FRSA. (Compl. (Dkt. # 1) ¶¶ 7-11.)

20   This matter is before the court on BNSF's motion to dismiss under Federal Rules of Civil

21   Procedure 12(b)(1) and 12(b)(6). (MTD (Dkt. # 6).) The court has considered the

22   parties' submissions in support of and in opposition to the motion, the relevant portions

of the record, and the applicable law.  Being fully advised,[1] the court GRANTS in part

and DENIES in part BNSF's motion to dismiss; ORDERS Mr. Dunn to show cause

within seven (7) days why the court should not dismiss his failure to offer alternative

handling claim for lack of subject matter jurisdiction; DISMISSES with prejudice his

December 17, 2014, suspension and investigation claims; and DISMISSES with leave to

amend the remainder of his retaliation claims.

## II.    BACKGROUND

This case arises from Mr. Dunn's employment with BNSF, a railroad carrier that

engages in interstate commerce.  (Compl. ¶¶ 2-3.)  Over the course of his employment,

Mr. Dunn and BNSF have been involved in several other lawsuits, two of which are

relevant here.[2]  Thus, the court recites the relevant portions of the two previous suits

before discussing the material facts of the present action.

**A.    Previous Litigation Between Mr. Dunn and BNSF**

Mr. Dunn initiated the first suit relevant to matters raised here in January of 2014.

In that case, he alleged that BNSF violated the FRSA by taking unfavorable employment

action—specifically in regard to leave time—against him in retaliation for his December

2007 report of a work-related injury.  (Compl. ¶ 7b; Endres Decl. (Dkt. # 7) ¶ 3, Ex. B at

9-10; *see also Dunn v. BNSF Ry. Co.*, No. C14-1621JLR, Dkt. # 1 (W.D. Wash.) ("*Dunn*

_____

[1] Mr. Dunn requests oral argument, but the court finds that oral argument would not be helpful to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Because BNSF raises arguments that necessarily require the court to consult past litigation (MTD at 12, 19-21), the court takes judicial notice of the publically filed court documents associated with these two previous actions, *see Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (allowing the court to take judicial notice of matters of public record that are not subject to reasonable dispute).

*I*").)  The parties stipulated to dismiss the suit with prejudice.  (Endres Decl. ¶ 3, Ex. B at 28-29.)

In June 2015, BNSF filed the second suit against Mr. Dunn for allegedly falsifying mileage information and, as a result, receiving overpayment.[3]  (*Id.* ¶ 4, Ex. C at 5-6.; *see also BNSF Ry. Co. v. McArthur*, No. C15-0992RAJ, Dkt. # 1 (W.D. Wash.) ("*Dunn II*").)  In his motion to dismiss that suit, Mr. Dunn argued that the federal court was without jurisdiction to hear the case because the Railway Labor Act ("RLA") preempted BNSF's tort suit.  (Endres Decl. ¶ 4, Ex. C at 32.)  He pointed out that determining whether he had properly recorded his mileage depended upon a provision of the collective bargaining agreement ("CBA") between his union and BNSF, and when it is necessary to interpret the CBA to resolve a dispute, the RLA requires exclusive use of its procedural mechanisms and generally preempts other simultaneous actions.  (*Id.* at 24, 33.)  The court agreed that it could not resolve the mileage dispute without consulting the CBA, and that the RLA demands such disputes be settled through binding arbitration.  (*Id.* at 126-27.)  Thus, it dismissed the suit for lack of subject matter jurisdiction.  (*Id.* at 128.)

**B.      Present Retaliation Suit**

Mr. Dunn now asserts that BNSF took the following six adverse actions against him during the course of his employment.  The first three unfavorable actions occurred on December 17, 2014:  (1) Mr. Dunn was "pulled . . . out of service without pay," (2)

---

[3] BNSF also named several other former employees as defendants (*see* Endres Decl. ¶ 4, Ex. C at 2), but because they are not relevant to the present action, the court focuses solely on how the case relates to Mr. Dunn.

told that he was being investigated for work-related conduct, and (3) was refused the option for "alternative handling."  (Compl. ¶¶ 8a-8c.)  Then, on or around March 25, 2015, he was (4) subjected to an investigatory hearing and (5) ultimately terminated a month later, on or around April 10, 2015.  (*Id.* ¶¶ 8d-8e.)  For each of the above disciplinary actions, BNSF (6) documented the action taken against Mr. Dunn on his employment record, "creating a potential for blacklisting."  (*Id.* ¶ 8f.)  Mr. Dunn maintains that BNSF took these six actions in retaliation for various protected activities that he engaged in, including reporting a work-related personal injury in December of 2007 (*id.* ¶ 7a); filing a whistleblower complaint with the Occupational Safety and Health Administration ("OSHA") in January of 2014 (*id.* ¶ 7b); raising "a number of safety-related concerns" in November of 2014, "including but not limited to requesting that notes be kept at safety meetings" (*id.* ¶ 7c); and attempting to comply with federal law in accurately reporting his time slips (*id.* ¶ 7d).

Based on BNSF's alleged retaliation, Mr. Dunn filed a complaint with OSHA on or about July 23, 2015, alleging that BNSF had violated the FRSA.  (*Id.* ¶ 4.)  The Secretary of Labor ("the Secretary") issued preliminary findings, to which Mr. Dunn objected.  (Endres Decl. ¶ 5, Ex. D. at 3-4, 7.)[4]  After 210 days elapsed since Mr. Dunn filed his original complaint without a final decision from the Secretary, he transferred his complaint to federal court for *de novo* review.  (Compl. ¶ 4; *see also* 49 U.S.C. § 20109(d)(3).)

---

[4] In considering a motion to dismiss, the court may "take judicial notice of public records, including the 'records and reports of administrative bodies' such as OSHA." *Fadaie v. Alaska*

# III. ANALYSIS

BNSF moves to dismiss Mr. Dunn's FRSA claims under both Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (MTD at 2.) The court now addresses each basis for dismissal in turn.

## A. Dismissal for Lack of Subject Matter Jurisdiction

Although BNSF characterizes its motion as a Rule 12(b)(1) motion to dismiss, it references a lack of subject matter jurisdiction only in passing. First, BNSF asserts that "estoppel binds [Mr. Dunn] to the argument that his entitlement to wages . . . must be, and is being, arbitrated under the [RLA], depriving the [c]ourt of subject matter jurisdiction over his lost wages claim." (MTD at 2 (footnote omitted); *see also id.* at 21 (stating that Mr. Dunn is "bound by his RLA preemption argument relating to wage loss, which deprives this [c]ourt of subject matter jurisdiction").) It then mentions a lack of jurisdiction again when discussing BNSF's refusal to offer Mr. Dunn "alternative handling" after he was suspended in December of 2014: "[W]hether or not [Mr. Dunn] is entitled to alternative handling can only be determined by interpreting [his CBA], thus any related claim is preempted by the [RLA]."[5] (*Id.* at 17.) It is unclear whether BNSF

---

*Airlines, Inc.*, 293 F. Supp. 2d 1210, 1214 (W.D. Wash. 2003) (quoting *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003)). Accordingly, the court takes judicial notice of the records related to Mr. Dunn's OSHA proceedings.

[5] BNSF additionally references the court's jurisdiction when presenting a statute of limitations argument. (*See* MTD at 16.) Mr. Dunn, however, insists that the time limit for filing as stated in the FRSA is not a jurisdictional requirement. (MTD Resp. at 11-14 (analogizing to the time limit in Title VII, which is not a jurisdictional requirement).) The court finds it unnecessary to address the characterization of the time-bar issue, because even accepting Mr. Dunn's argument, the limitations period was also raised as a basis for 12(b)(6) dismissal. (*See*

asserts that judicial estoppel deprives the court of jurisdiction, or whether it argues that the RLA preempts only the alternative handling claim. Nonetheless, the court addresses both contentions.

     1.  <u>Legal Standard</u>

     Under Rule 12(b)(1), the court must dismiss claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction is either facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). However, if the moving party "convert[s] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). In either instance, the party

---

MTD at 16.) Accordingly, the issue of whether Mr. Dunn's claims are time-barred will be addressed below. *See infra* § III.B.4.a.

asserting its claims in federal court bears the burden of establishing subject matter

jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

2. Judicial Estoppel

To the extent that BNSF argues that judicial estoppel strips the court of

jurisdiction, it misapprehends the nature of the doctrine. Judicial estoppel is an

"equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532

U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990))

(internal quotation marks omitted). Courts consider judicial estoppel an affirmative

defense that does not affect a court's jurisdiction. *See Khadera v. ABM Indus. Inc.*, No.

C08-0417RSM, 2012 WL 581402, at *2 (W.D. Wash. Feb. 21, 2012); *Idearc Media LLC

v. Glassman*, No. 10-1216, 2011 WL 570017, at *2 (E.D. Pa. Feb. 15, 2011). As such, an

argument claiming judicial estoppel is more properly considered under Rule 12(b)(6).

*See Black v. Midland Credit Mgmt., Inc.*, No. C13-5626RBL, 2013 WL 5140181, at *1

(W.D. Wash. Sept. 12, 2013) ("While dismissal on 12(b)(6) grounds is generally

disfavored, a court may dismiss a claim when the plaintiff has included allegations

disclosing some absolute defense or bar to recovery, such as judicial estoppel."). Thus,

even if judicial estoppel were to bar this suit, it would not deprive the court of

jurisdiction; accordingly, the court addresses the merits of BNSF's judicial estoppel

argument in its 12(b)(6) analysis. *See infra* § III.B.5.

//

//

//

3. <u>Preemption of Alternative Handling Claim</u>

BNSF next argues that the court is without jurisdiction to adjudicate Mr. Dunn's alternative handling claim,[6] which BNSF contends would require interpretation of the CBA and is thus preempted by the RLA. (MTD at 17; Reply at 9.) One of the purposes of the RLA is "to provide for the prompt and orderly settlement of all disputes growing out of . . . the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a(5). In pursuit of this goal, the RLA establishes a "mandatory arbitral mechanism" when there are disputes concerning "the interpretation or application of [CBAs]," such as "controversies over the meaning of an existing [CBA] in a particular fact situation." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-53 (1994) (quoting *Trainmen v. Chicago River & Ind. R.R. Co.*, 353 U.S. 30, 33 (1957)) (internal quotation marks omitted). These disputes, known as "minor disputes," are within the exclusive jurisdiction of an arbitrator, and therefore, any federal suit involving minor disputes would be preempted. *See id.* at 253.

BNSF maintains that Mr. Dunn's alternative handling claim involves a "minor dispute" because the court must ascertain whether Mr. Dunn was entitled to alternative handling in the first place, a determination that requires interpretation of the CBA. (MTD at 17; Reply at 9.) As support, it cites to *Brisbois v. Soo Line Railroad Company*, 124 F. Supp. 3d 891 (D. Minn. 2015), a FRSA case where the employee claimed several adverse

---

[6] Mr. Dunn does not specify what "alternative handling" is. (*See* Compl. ¶ 8c.) The court assumes that it is an alternate form of discipline that BNSF may employ after an alleged infraction. *See Davis v. BNSF Ry. Co.*, No. 12C3992, 2015 WL 1538784, at *2 (N.D. Ill. Mar. 30, 2015) (describing alternative handling as "an alternative approach to discipline that stresses training and counseling").

actions, such as denial of reimbursements and promotions. *See id.* at 897. The court

observed that to decide whether retaliation occurred, it had to first determine whether the

employee was entitled to those reimbursements and promotions—determinations that

were "dependent on the CBA" because the employee could not identify anything outside

of the CBA that granted her such entitlement. *Id.* Because it would be "impossible for

the Court to adjudicate [the employee's] claims without interpreting the provisions of the

CBA," those claims were minor disputes that were preempted by the RLA. *Id.*

Here, Mr. Dunn provides the court with little information about what alternative

handling is, let alone from where his entitlement to alternative handling derives. (*See*

Compl. ¶ 8c.) And in response to BNSF's contentions, Mr. Dunn suggests vaguely that

the FRSA itself may give rise to rights and obligations independent of his CBA, with no

specific reference to alternative handling. (*See* MTD Resp. at 18 ("The [FRSA] therefore

imposes rights and obligations that exist independent of [Mr.] Dunn's CBA, and any

argument to the alternative is simply unavailing.").) From Mr. Dunn's inability to

ascertain the origin of his entitlement to alternative handling, it appears to the court that,

like in *Brisbois*, the "only source of any entitlement . . . would be the CBA." *See* 124 F.

Supp. 3d at 897. But without the CBA or any information specific to the terms of Mr.

Dunn's employment, the court cannot reach any conclusion, as the *Brisbois* court did,

regarding his right to alternative handling and whether it requires interpretation of the

CBA.[7]

---

[7] The court recognizes that BNSF points to several cases in other jurisdictions where the right to alternative handling was covered by the CBA. (*See* Reply at 9 n.2.) But cases involving

Accordingly, the court orders Mr. Dunn to show cause, within seven (7) days, why his alternative handling claim should not be dismissed for lack of subject matter jurisdiction. In his submission, Mr. Dunn must state specifically where his right to alternative handling originates, if not from the CBA. He must respond to this order no later than seven (7) days of the entry of this order. If he does not timely comply with this order, or otherwise fails to adequately respond, the court will dismiss his claim of alternative handling for lack of subject matter jurisdiction.

**B.    Dismissal for Failure to State a Claim**

The court now considers BNSF's various arguments for Rule 12(b)(6) dismissal of Mr. Dunn's FRSA retaliation claims. The FRSA serves "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Pursuant to the FRSA, a railroad carrier, such as BNSF, may not "discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part," to an employee's engagement in a protected activity. *Id.* § 20109(a). To state a claim of retaliation under the FRSA, a plaintiff bears the initial burden of pleading sufficient facts that demonstrate "(1) he engaged in a protected activity; (2) the employer knew he engaged in the allegedly protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action." *Rookaird v. BNSF Ry. Co.*, No. C14-176RSL, 2015 WL 6626069, at *2 (W.D. Wash. Oct. 29, 2015);

---

other BNSF employees in other regions do not, standing alone, inform the court about Mr. Dunn's entitlement to alternative handling.

*Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013); *cf.*

*Tamosaitis v. URS Inc.*, 781 F.3d 468, 481 (9th Cir. 2015) (reciting the prima facie case

for an analogous Energy Reorganization Act retaliation claim).[8]  If the plaintiff

establishes this prima facie case, the burden shifts to the railroad carrier to demonstrate

"by clear and convincing evidence that [it] would have taken the same unfavorable

personnel action in the absence of the protected activity."  *Rookaird*, 2015 WL 6626069,

at *2; *cf. Tamosaitis*, 781 F.3d at 481.

BNSF argues that Mr. Dunn fails to state a claim on three of the above elements

necessary for a prima facie showing.  First, it insists that the complaint be dismissed in

whole because Mr. Dunn did not plead sufficient factual allegations relating to the

contributing factor element.  (MTD at 11-12.)  In the alternative, it asserts that the

pleadings surrounding the elements of protected activity and adverse action are

insufficient, and thus the complaint fails to state a claim upon which relief can be

granted.  (*Id.* at 12-19.)

    1. Legal Standard

Dismissal for failure to state a claim "is proper if there is a lack of a cognizable

legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

*Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation

marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient

---

[8] The parties disagree over whether BNSF's knowledge of Mr. Dunn's purported engagement in a protected activity is a standalone element of FRSA retaliation, or whether it is merely a factor to consider in the contributing-factor analysis.  (*See* MTD Resp. at 7-8 n.10; Reply at 3 n.1.)  The court need not resolve this question of law, because BNSF's knowledge is not currently in dispute.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Mere conclusory statements" or "formulaic recitation[s] of the elements of a cause of action," however, "are not entitled to the presumption of truth." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing *Twombly*, 550 U.S. at 555).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). On a motion to dismiss, the court may consider the pleadings, documents attached to the pleadings, documents incorporated by reference in the pleadings, or matters of judicial notice. *Ritchie*, 342 F.3d at 908 (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)).

2. Contributing Factor

BNSF first argues that Mr. Dunn failed to assert "any facts sufficient to support the contributing factor allegation." (MTD at 11.) Instead, BNSF maintains that Mr. Dunn's allegations regarding this element boil down to one "bare conclusory allegation":

> BNSF, its officers, employees, contractors, and/or subcontractors took those actions to discipline, suspend, reprimand, place on probation, demote, or in some other way discriminate against Mr. Dunn due, in whole or in part, to the fact that he had engaged in one or more of the protected activities outlined above.

(Reply at 2 (quoting Compl. ¶ 10).) The court agrees that this recitation of the statutory language, *see* 49 U.S.C. § 20109(a), constitutes nothing more than a "'naked assertion' devoid of 'further factual enhancement.'" *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

To plausibly state a claim of retaliation, Mr. Dunn must plead factual content that allows the court to reasonably infer that his protected activity was a contributing factor to BNSF's alleged retaliatory actions. *See Rookaird*, 2015 WL 6626069, at *5; *Araujo*, 708 F.3d at 157. A contributing factor is "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014) (internal quotation marks omitted). That a protected activity was a contributing factor can be shown by alleging facts regarding "temporal proximity, indications of pretext, and a change in the employer's attitude toward the employee after he engages in protected activity." *Rookaird*, 2015 WL 6626069, at *5.

Here, Mr. Dunn's contributing factor allegation amounts to "a formulaic recitation of [an] element[] of a cause of action." *See Twombly*, 550 U.S. at 555. He alleges that BNSF took adverse actions "due, in whole or in part, to the fact that he had engaged in . . . protected activities," (Compl. ¶ 10), but includes no factual content of any kind or specificity to support this conclusory allegation. The court therefore cannot plausibly infer that Mr. Dunn's protected activities were a contributing factor to BNSF's

1    unfavorable personnel actions taken against him.  Accordingly, the court dismisses Mr.

2    Dunn's retaliation claims against BNSF for failure to state a claim upon which relief may

3    be granted.[9]

4        3.  Protected Activities

5        Additionally, BNSF raises several challenges to Mr. Dunn's asserted protected

6    activities.  (MTD at 12-15.)  To sustain a retaliation claim under the FRSA, a plaintiff

7    must have engaged in a protected activity.  *Rookaird*, 2015 WL 6626069, at *2; *Araujo*,

8    708 F.3d at 157.  The FRSA specifies what constitutes a protected activity, grouping

9    them generally into three categories:  (1) providing information pertaining to the

10   investigation of or proceeding about a violation of safety regulations, *see* 49 U.S.C.

11   § 20109(a); (2) reporting or refusing to work around a hazardous safety condition, *see id.*

12   § 20109(b); and (3) requesting medical treatment for a work-related injury, *see id.*

13   § 20109(c).  BNSF takes issue with three of the four protected activities that Mr. Dunn

14   alleges to have taken part in: (1) reporting a work-related injury in December 2007; (2)

15   raising "safety-related concerns" in November 2014; and (3) complying with federal law

16   by accurately reporting his time slips in December 2014.  (MTD at 12-15.)

17       a.  *December 2007 Report of Work-Related Injury*

18       BNSF contends that Mr. Dunn's injury report in December 2007 is "subject to res

19   judicata" because it was already adjudicated in *Dunn I*—a previous suit where Mr. Dunn

20   _____

21       [9] Although the court dismisses the retaliation claims as a whole due to the insufficiency
     of the contributing factor element, it proceeds to address BNSF's additional challenges to Mr.
     Dunn's asserted protected activities and adverse actions.  The court does so as a matter of
     judicial efficiency, as Mr. Dunn will be given leave to amend his complaint and should take that
22   opportunity to address all of the insufficiencies the court identifies.

utilized the same protected activity as a basis for a FRSA retaliation suit.[10]  (MTD at 12;

*see also* Endres Decl. ¶ 3, Ex. B at 9-10.)  The court disagrees.  Res judicata bars

successive lawsuits only when the two suits involve an "identity of claims," meaning "a

single cause of action which was or should have been placed from the judiciary as a

unified whole." *Fadaie v. Alaska Airlines, Inc.*, 293 F. Supp. 2d 1210, 1217 (W.D.

Wash. 2003).  In determining whether successive suits involve a single cause of action,

the court considers:

> (1) whether rights or interests established in the prior judgment would be
> destroyed or impaired by prosecution of the second action; (2) whether
> substantially the same evidence is presented in the two actions; (3) whether
> the two suits involve infringement of the same right; and (4) whether the two
> suits arise out of the same transactional nucleus of facts.

*Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980).  The last of these factors—the same

transactional nucleus of facts—is the most important.  *Id.*

Here, Mr. Dunn's present FRSA suit and his previous FRSA suit in *Dunn I* do not

arise out of the same transactional nucleus of facts.  Although both suits reference the

same work injury report in December 2007, the adverse actions alleged here, including

Mr. Dunn's suspension and ultimate termination, had yet to occur at the time of *Dunn I*.

(*See* Compl. ¶¶ 7b, 8.)  Thus, the two suits do not, and could not, arise out of the same

---

[10] From the outset, it is unclear whether an alleged protected activity, standing alone, may
be subject to res judicata, because merely engaging in a protected activity does not constitute a
retaliation claim.  *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (characterizing
res judicata, or claim preclusion, as a bar on claims).  Instead, engagement in one or more
protected activities is a necessary element to support a retaliation claim.  *See Araujo*, 708 F.3d at
157.  Thus, BNSF's characterization of the December 2007 injury report as a "protected activity
claim" is questionable (*see* MTD at 12); nonetheless, the court proceeds to analyze the res
judicata argument as a bar on the FRSA claim that is based upon this protected activity.

transactional nucleus of facts, as one critical set of facts—the events leading up to Mr.

Dunn's termination—would not occur for another 11 months or so after the initiation of

*Dunn I*.  (*See id.*); *see also Fadaie*, 293 F. Supp. 2d at 1218 (declining to apply res

judicata when the employee "could not have raised a retaliation claim regarding his

termination because it had not yet occurred when the agency considered his other

claims").  Thus, it is impossible to conclude that Mr. Dunn could have or should have

raised his termination-related retaliation claims in the earlier proceeding, and the court

rejects BNSF's argument that the December 2007 work-related injury report is subject to

res judicata.[11]  Accordingly, this protected activity survives as a basis for Mr. Dunn's

retaliation claim.

### b.  November 2014 Safety-Related Concerns

Next, BNSF attacks Mr. Dunn's allegation that he "raised a number of

safety-related concerns . . . including but not limited to requesting that notes be kept at

safety meetings" (Compl. ¶ 7c) as an insufficient "vague, [and] conclusory statement"

(MTD at 13).  The court agrees.  The law recognizes that some concerns, although

tangentially safety-related, are nonetheless not protected activities because they are not a

report of a hazardous safety condition, as required for the activity to be protected under

49 U.S.C. § 20109(b).  *See Kuduk*, 768 F.3d at 789.  Additionally, such activity would

not be protected under 49 U.S.C. § 20109(a), unless the "safety-related concerns" were

---

[11] BNSF also alleges that Mr. Dunn's December 2007 injury report fails because "[a]n eight-year gap between reporting the injury and being removed from service in December 2014 . . . is far too long to support a connection."  (MTD at 12.)  This argument is more properly construed as an attack on the contributing factor requirement and thus will not be addressed here. *See supra* § III.B.2.

associated with an employer's violation of a federal law, rule, or regulation regarding railroad safety.  *See* 49 U.S.C. § 20109(a)(1)-(3), (5)-(6).  For instance, in *Kuduk v. BNSF Railway Company*, an employee concern about the way a safety test was conducted did not qualify as a protected activity because the employee did not explain how "the way [the employer] conducted the test created a hazardous safety condition."  768 F.3d at 789.

In a similar vein, it is difficult to see how the lack of note-taking at safety meetings creates a hazardous safety condition or is associated with a violation of railroad safety law.  And Mr. Dunn provides no additional facts outside of his one-sentence statement to support his conclusory allegation that raising these concerns constitutes a protected activity.  (*See* Compl. ¶ 7, 7c.)  The complaint does not explain the nature of these concerns, whether any concerns involved violations of federal railroad safety laws, or with whom Mr. Dunn shared these concerns.  (*See generally id.*)  Without more, the court cannot reasonably infer that the concerns involved a railroad safety violation, as protected by 49 U.S.C. § 20109(a), or that these concerns were reports of a hazardous safety condition, as protected by 49 U.S.C. § 20109(b).  Accordingly, the court rejects this alleged protected activity as a theory to satisfy a required element of Mr. Dunn's retaliation claim.

### c.  *December 2014 Time Slip Reporting*

Lastly, BNSF contests Mr. Dunn's assertion that he engaged in protected activity by "attempt[ing] to comply with Federal Law in accurately reporting on his time slips." (MTD at 13-15; Compl. ¶ 7d.)  An employee's good faith act, undertaken to accurately report hours on duty pursuant to federal law, constitutes a protected activity under the

FRSA. 49 U.S.C. § 20109(a)(7). But here, Mr. Dunn rests solely on a conclusory allegation that his attempt to accurately report his time slips qualifies under this provision, without providing any further factual assertions. It bears repeating that such conclusory statements are not entitled to a presumption of truth, *see Iqbal*, 556 U.S. at 678, and once the court strips away this conclusory language, there are no factual allegations remaining from which the court can reasonably infer that Mr. Dunn engaged in a protected activity. As such, the court dismisses this alleged protected activity as a theory to satisfy a required element of a retaliation claim.[12]

In sum, the court concludes that Mr. Dunn insufficiently pleads two of the asserted protected activities: (1) his allegation that he raised a number of safety-related concerns in November 2014 (Compl. ¶ 7c), and (2) his contention that he attempted to comply with federal law to report his hours in December 2014 (*id.* ¶ 7d). *See supra* §§ III.B.3.b-c. However, two other protected activities Mr. Dunn alleges in the complaint remain viable theories upon which he may base his retaliation claim: (1) his report of a work-related injury in December 2007 (*id.* ¶ 7a), and (2) his whistleblower complaint initiated in January 2014 (*id.* ¶ 7b). *See supra* § III.B.3.a.

//

//

---

[12] BNSF assumes that this December 17, 2014, attempt to report hours is related to Mr. Dunn's suspension on the same day, and raises several additional arguments based on that assumption. (*See* MTD at 14-15.) Given that the court is not provided any factual allegations surrounding this attempt to report hours, the court cannot determine whether, or if at all, it is related to Mr. Dunn's December 17th suspension. Thus, the court is unable to address BNSF's argument that Mr. Dunn has perjured himself, or that this purported protected activity could not be the basis of a suspension that occurred earlier in the day. (*See* MTD at 14-15.)

4. <u>Adverse Actions</u>

Mr. Dunn claims that BNSF took six discrete adverse employment actions against him (Compl. at ¶ 8), and BNSF challenges all six for failure to state a claim under Rule 12(b)(6) (MTD at 15-19). Because the court has already addressed one of the adverse action claims—failure to offer alternative handling—in the Rule 12(b)(1) context, *see supra* § III.A.3, it analyzes only the remaining adverse action claims here.[13]

a. *December 17, 2014, Suspension and Notification of Investigation*

BNSF argues that two of Mr. Dunn's adverse action claims that occurred in December 2014—BNSF pulling Mr. Dunn out of service without pay and notifying him that he was under investigation—are time-barred. (MTD at 15-17.) The court agrees. The FRSA requires that a party bringing a retaliation action file a charge within 180 days of the alleged violation. 49 U.S.C. § 20109(d)(2)(ii). The statute "precludes recovery for discrete acts of . . . retaliation that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (analyzing the analogous statute of limitations under Title VII). "A party, therefore, must file a charge within [the specified number of days] of the date of the [alleged retaliatory act] or lose the ability to recover for it." *Id.* at 110. Although recovery for any action outside the 180-day period

//

---

[13] Whereas a "protected activity claim" is a misnomer because engagement in a protected activity merely satisfies an element of a retaliation claim, *see supra* § III.B.3.a n.10, courts do consider each purported adverse action taken by an employer to be the basis of separate claims of retaliation, *see Wallis v. BNSF Ry. Co.*, No. C13-40TSZ, 2013 WL 12073476, at *4 (W.D. Wash. Dec. 30, 2013). Thus, the court considers Mr. Dunn's six alleged adverse actions to be asserting six claims of unlawful retaliation.

is barred, an employee may still use "the prior acts as background evidence in support of a timely claim." *Id.* at 113.

Here, Mr. Dunn did not file his initial complaint with the Secretary until July 23, 2015. (Compl. ¶ 4.) Thus, the actionable time frame runs from January 24, 2015, to July 23, 2015. Any supposed retaliatory action that occurred before January 24, 2015, is not actionable, even when that action is related to acts alleged in timely filed charges. *See Morgan*, 536 U.S. at 113. Accordingly, neither the suspension without pay nor the notification of investigation that occurred on December 17, 2014, is actionable, and to the extent these discrete acts form the basis of Mr. Dunn's retaliation claim, recovery is time-barred.

Mr. Dunn does not dispute that the December 17th actions fall outside the permitted time-window. Instead, he argues only that the 180-day limit under the FRSA "is not a jurisdictional requirement," and that BNSF's time-bar contention is "not properly raised under Fed. R. Civ. P. 12(b)." (MTD Resp. at 14.) This argument is mistaken. Even assuming Mr. Dunn is correct that the 180-day filing limit is not jurisdictional, that only precludes BNSF from raising a timeliness challenge under Rule 12(b)(1)—the provision addressing the court's subject matter jurisdiction. Dismissal would still be appropriate under Rule 12(b)(6) if "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)) (internal quotation marks omitted). And indeed, BNSF raises timeliness as a basis for 12(b)(6) dismissal, arguing for 12(b)(1) dismissal only "in the alternative." (MTD at 16; *see also*

*id.* at 12, 17.)  Therefore, the court grants the dismissal of the two December 17, 2014,

adverse action claims as time-barred.

### b.  March 2015 Investigatory Hearing

BNSF next maintains that "holding an investigation, on its own, does not

constitute an adverse action."  (MTD at 17.)  The FRSA prohibits a railroad carrier from

discharging, demoting, suspending, reprimanding, or "in any other way retaliat[ing]

against" an employee, "including but not limited to intimidating, threatening, restraining,

coercing, blacklisting, or disciplining, an employee for [engaging in protected

activities]."  29 C.F.R. § 1982.102(b)(2)(i).  Those adverse actions include any treatment

that "is reasonably likely to deter employees from engaging in protected activity," *Ray v.*

*Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000), and can cover a "wide array of

disadvantageous changes in the workplace," *id.* at 1240.

BNSF argues that notification of a disciplinary investigation can never constitute

an adverse action, relying heavily on *Brisbois*.  (MTD at 17-18; Reply at 9-10.)  In that

case, the employee alleged that "merely being *accused* of violating workplace rules—and

having to address those accusations at a disciplinary hearing" is an adverse employment

action under the FRSA.  124 F. Supp. 3d at 902.  The court rejected this argument.  While

it acknowledged that "any investigation of a suspected rule violation carries an implicit

threat that, if the employee is found to have violated the rule, she might be disciplined,"

that is a "far cry" from an explicit threat of disciplinary action.  *Id.* at 903.  Thus, the

court dismissed the retaliation claim resting on the employer's investigation.  *Id.*

*//*

1    Mr. Dunn responds that the definition of adverse action in the FRSA context must

2    be broader than what *Brisbois* declared.  (MTD Resp. at 14-15.)  It points to the broad

3    language of the FRSA, the Ninth Circuit's expansive view of retaliation claims in

4    general, and the Secretary's broad definition of FRSA adverse actions as "unfavorable

5    employment actions that are more than trivial, either as a single event or in combination

6    with other deliberate employer actions alleged," *Fricka v. Nat'l R.R. Passenger Corp.*,

7    ARB No. 14-047, 2015 WL 9257754, at *3 (ARB Nov. 24, 2015).  (MTD Resp. at

8    14-17.)  Thus, Mr. Dunn contends that "notification of a disciplinary investigation" alone

9    can be an adverse action "if it is unfavorable and non-trivial."  (*Id.* at 17.)

10         The court need not determine whether an investigation alone constitutes an

11   adverse employment action, because even adopting Mr. Dunn's proposed definition, his

12   allegation is insufficient.  The complaint asserts only that "BNSF subjected Mr. Dunn to

13   an investigatory hearing."  (Compl. ¶ 8d.)  It includes no other details about what the

14   hearing entailed, Mr. Dunn's obligations during the hearing, or any negative impacts Mr.

15   Dunn suffered as a result of the hearing.  (*See id.*)  In fact, the complaint provides the

16   court with no information other than the fact that an investigatory hearing occurred.  (*See*

17   *id.*)  Thus, there are no factual allegations from which the court can reasonably infer that

18   the notification of a disciplinary investigation here was both unfavorable and non-trivial.

19   *See Fricka*, 2015 WL 9257754, at *3.  The court therefore dismisses the March 2015

20   investigatory hearing claim for failure to state a claim.

21   //

22   //

*c. April 10, 2015, Termination*

It is undisputed that "discharge" is one of the unfavorable personnel actions the FRSA recognizes. 49 U.S.C. § 20109(a). Thus, Mr. Dunn's termination from BNSF in April 2015 undoubtedly qualifies as an adverse employment action, as provided for by the statute. BNSF attacks, instead, the portion of the claim where Mr. Dunn asserts that this termination was "because of his actions on or around December 17, 2014." (MTD at 18.) This argument therefore is more squarely an attack on the contributing factor element. Because the court has already addressed that element, *see supra* § III.B.2, it will not entertain this argument about why Mr. Dunn was terminated, or how Mr. Dunn's purported reasons for his termination may have contradicted previous pleadings, none of which is relevant to whether termination qualifies as an adverse action. Therefore, the court concludes that Mr. Dunn's termination in April 2015 is an adverse action under the FRSA and denies BNSF's motion to dismiss this claim.

*d. Potential Blacklisting*

Mr. Dunn asserts that BNSF took adverse action against him by noting "these things" on his employment record, thus "creating a potential for blacklisting." (Compl. ¶ 8f.) BNSF claims that this statement alone does not create a "plausible basis to support an allegation relating to blacklisting," thus failing to state a claim upon which relief can be granted. (MTD at 19.) The court agrees.

Although "blacklisting" an employee is an adverse action, *see* 29 C.F.R. § 1982.102(b)(2)(i), Mr. Dunn does not allege that BNSF blacklisted him, only that BNSF, through its record-keeping, created "a potential for blacklisting" (Compl. ¶ 8f). It

is also unclear what specifically BNSF documented in Mr. Dunn's employment record, as he alludes only vaguely to "these things." (*See id.*) Without more factual allegations, the court cannot reasonably infer that BNSF blacklisted Mr. Dunn and therefore dismisses this potential blacklisting claim for failure to state a claim.

In summary, the court concludes that two of the six adverse action claims—suspension and investigation in December 2014—are time-barred and are thus dismissed with prejudice. *See supra* § III.B.4.a. Two additional adverse action claims—the March 2015 investigatory hearing and the potential blacklisting—are insufficiently pled and thus also must be dismissed. *See supra* §§ III.B.4.b, d. However, one adverse action claim—Mr. Dunn's termination in April 2015—survives BNSF's motion to dismiss. *See supra* § III.B.4.c.

5. Judicial Estoppel

Lastly, BNSF argues that judicial estoppel bars Mr. Dunn from asking the court to award him lost wages because he argued previously in *Dunn II* that wage computation is governed by the CBA and thus falls outside this court's jurisdiction. (MTD at 19-21.) Judicial estoppel "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). This doctrine aims "to prevent litigants from playing 'fast and loose' with the courts and to protect the integrity of the judicial system." *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013). Three factors inform the court's application of judicial estoppel. *See New Hampshire*, 532 U.S. at 750. First, a party's later position must be "clearly

inconsistent" with its earlier position.  *Id.*  Second, the party must have succeeded in

persuading a court to accept its earlier position.  *Id.*  And third, the party seeking to assert

an inconsistent position would "derive an unfair advantage or impose an unfair detriment

on the opposing party if not estopped."  *Id.* at 751.

*Russell v. Rolfs* illustrates the application of this doctrine.  893 F.2d at 1037-39.  In

that case, judicial estoppel barred the state from opposing an appellant's petition for

habeas relief.  *Id.* at 1038.  In a previous habeas proceeding, the state had argued that the

appellant ought to have pursued a state court remedy that was "adequate and available."

*Id.* at 1034.  Accepting this argument, the court denied that initial petition for failure to

exhaust state remedies.  *Id.*  But when the appellant pursued that remedy in a subsequent

petition for habeas relief, the state then "disregarded its previous representation . . . and

argued the petition was procedurally barred."  *Id.* at 1037.  Because this later position—

that the remedy was unavailable—was clearly inconsistent with the earlier, accepted

position—that the remedy was adequate and available—judicial estoppel barred the state

from subsequently opposing the petition on the basis that the remedy was procedurally

barred.  *Id.* at 1038-39.

Unlike the state in *Russell*, Mr. Dunn did not take any such clearly inconsistent

positions.  BNSF asserts that Mr. Dunn cannot now seek lost wages as damages when in

*Dunn II*, he argued that calculation of wages can only be done by interpreting the CBA,

which would strip the federal court of jurisdiction.  (MTD at 20.)  But this

characterization misconstrues the exact argument made in *Dunn II*.  There, in response to

various counts of tortious behavior, Mr. Dunn maintained that the issue of whether he

properly calculated and recorded his mileage was governed by the CBA. *See Dunn II*, No. C15-0992RAJ, Dkt. # 54 at 2. He did not argue that the court had no jurisdiction to award wage-related damages upon the finding of liability under an applicable federal statute. And indeed, there is no indication that the damages in this case would involve the proper calculation and input of mileage. Thus, Mr. Dunn's earlier position in *Dunn II*—that the CBA governs how mileage should be calculated and reported—is not clearly inconsistent with his position here—that he be awarded back and front pay if BNSF is found liable for unlawful retaliation. Accordingly, the court rejects BNSF's contention that Mr. Dunn be judicially estopped from requesting relief in the form of lost wages.

   6. <u>Leave to Amend</u>

   As a general rule, when a court grants a motion to dismiss, the court should grant leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). The policy favoring amendment is to be applied with "extreme liberality." *Id.* at 1051. In determining whether dismissal without leave to amend is appropriate, courts consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

   Here, two of the adverse action claims alleged by Mr. Dunn are time-barred and thus not actionable under the FRSA. *See supra* § III.B.4.a. Because these claims are
*//*

untimely, leave to amend would be futile, regardless of additional factual allegations. The court accordingly denies leave to amend as to these two claims.

However, the court grants Mr. Dunn leave to amend his pleadings regarding the contributing factor element and his remaining insufficient adverse action claims. As the court explains above, the factual allegations supporting the contributing factor element and two of the adverse actions claims are deficient. *See supra* §§ III.B.2, III.B.4.b, III.B.4.d. However, it is conceivable that further nonconclusory factual allegations would adequately support Mr. Dunn's claims. Furthermore, although BNSF requests that leave to amend be denied, (Reply at 3), it makes no specific showing of undue delay, bad faith, or dilatory motive on Mr. Dunn's part, *see Foman*, 371 U.S. at 182. Therefore, the court concludes that leave to amend is appropriate as to the contributing factor element, the March 2015 investigatory hearing adverse action claim, and the potential blacklisting adverse action claim.

As for the protected activity requirement, the court notes that two of the purported protected activities survive BNSF's motion to dismiss. *See supra* § III.B.3. Because an employee need only engage in one protected activity to sustain a retaliation claim, Mr. Dunn is not obligated to amend what he insufficiently pled: the November 2014 safety-related concerns and the December 2014 attempt to lawfully report hours. But to the extent that he wishes to include these additional events as theories underlying his retaliation claim, he must provide further nonconclusory factual allegations that would adequately support their qualification as protected activities.

//

If Mr. Dunn opts to amend his complaint, he must submit the amended complaint within fourteen (14) days of the entry of this order. Unlike the original complaint, which often utilizes only one sentence to describe allegations in a conclusory fashion, any amended complaint must supply detailed factual information supporting the purported assertions, from which the court may make reasonable inferences. Mr. Dunn must submit with the amended complaint a redlined version of the complaint or a document that otherwise identifies the changed or added factual allegations. *See* Local Rules W.D. Wash. LCR 15. If Mr. Dunn fails to timely amend his complaint or fails to remedy the pleading deficiencies identified herein, the court may treat that failure as evidence of futility of further amendment.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part BNSF's motion to dismiss (Dkt. # 6). The court further GRANTS Mr. Dunn leave to amend, within fourteen (14) days, as set forth in this order. The court ORDERS Mr. Dunn to show cause, within seven (7) days, why the court should not dismiss his retaliation claim regarding the failure to offer alternative handling for lack of subject matter jurisdiction.

Dated this 25th day of August, 2017.

JAMES L. ROBART
United States District Judge